UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**PAUL TOTH**,                                       Case No. 3:09 CV 01662

     Plaintiff,                          Judge Jack Zouhary

     vs.                                 REPORT AND RECOMMENDATION

**CITY OF TOLEDO, ET AL.**,

     Defendants.                         Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Paul Toth is a police officer in the City of Toledo Police Department. He believes the City and the leaders of the Department have discriminated against him because he is white. In response, he brings this action against the City, Michael Navarre in his official capacity as Chief of Police, and Robert Reinbolt in his official capacity as Director of the Department of Public Safety. Defendants Navarre and Reinbolt, who longer works for the City, are named in their official capacities only, therefore this suit is, in essence, a suit against the City of Toledo. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Plaintiff originally filed this action in the Lucas County Court of Common Pleas. Defendants removed the case to this Court. The District Court has jurisdiction over this case under 28 U.S.C. § 1331. Plaintiff brought three causes of action:

    1.    Discrimination in disciplining Plaintiff in violation of Ohio Revised Code Chapter 4112;

    2.    Violation of 42 U.S.C. §§ 1981 & 1983;

    3.  Discrimination in promotion in violation of Revised Code Chapter 4112 and 42 U.S.C. §§ 1981 & 1983.

(Doc. 1-1, at 4-7).

  Defendants filed a Motion for Summary Judgment on all counts. (Doc. 19). Plaintiff filed an Opposition (Doc. 32), and Defendants filed a Reply (Doc. 53). This Motion was referred to the undersigned for a Report and Recommendation. (Doc. 52). For the reasons explained below, the undersigned recommends the Motion be granted.

## Background

  Viewing the facts in a light most favorable to Plaintiff, the background to this case is as follows. Plaintiff is a patrolmen with the Toledo Police Department and has been since December of 2000. He is a member of a collective bargaining unit, the Toledo Police Patrolman's Association (TPPA), and has enjoyed the protections of the collective bargaining agreement (CBA) between Defendant City and the TPPA for most of the period he has been employed.

  Plaintiff has received some awards and commendations for police work throughout his career. Plaintiff also has a disciplinary history which includes two serious incidents from 2007.

### *Plaintiff's 2007 Discipline*

  The first of the offenses arose out of an incident occurring in March 2007. Based on the accusations of an African-American citizen who alleged rough treatment by Plaintiff during his arrest, including being slammed against a wall of the police station elevator, Plaintiff was originally charged internally with "Excessive Use of Force" and "Willful Violation" of any law or civil service regulation. Those original charges were found not credible and were "Non-sustained." However, during the internal affairs investigation into these charges, it was discovered that Plaintiff had

purposely recorded over a videotape which had been seized from the citizen during his arrest. In other words, he destroyed evidence. As a result, Plaintiff was charged with two additional rules violations: "Conduct Subversive" to the good and order of the police department, and "Willful Violation." Represented by his union, Plaintiff entered into a plea agreement, waived his right to a hearing, and pleaded guilty to both of these offenses in July 2007. As a result of the guilty plea, Plaintiff was assessed a 50 workday suspension without pay, 25 days of which were held in abeyance for two years, subject to future violations. (Doc. 17-1).

In June 2007, before the internal affairs investigation of the first incident was completed, Plaintiff was investigated for another serious disciplinary offense. This second incident arose out of rough physical treatment and arrest of a citizen for a traffic offense. Plaintiff was originally charged with "Abuse of Authority" for this incident. At the hearing in October 2007, Plaintiff, again represented by his union, entered into a plea agreement, waived his right to a hearing, and pleaded no contest to the lesser charge of "Conduct Unbecoming an Officer." As a result, Plaintiff was found guilty and assessed a 30 workday suspension without pay, fifteen days of which were held in abeyance for two years subject to future violations; and Plaintiff was also terminated from employment, with the termination held in abeyance for three years subject to good behavior . (Doc. 17-2)

### *Passed Over for Promotion*

Plaintiff took the written Sergeant examination in 2006, and based on his exam score placed in the "band" of qualified candidates. As a member of the band, he is considered statistically equal to everyone else in the band. (Navarre Deposition, Doc. 33-12, at 18-21). The selection process for promotion to Sergeant also involves consideration of several other factors, including educational

background, sick time usage, performance evaluation, and disciplinary record. (Navarre Deposition, Doc. 33-12, at 21; Wallace Deposition, Doc. 33-5, at 43).

Of the seventeen officers promoted off the 2006 list, three are African-American. (Navarre Supplemental Affidavit, Doc. 53-1, at ¶ 7). Plaintiff was not promoted to Sergeant.

## Standard of Review

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## Analysis

### Section 1981 Claims

To the extent Plaintiff seeks to recover under 42 U.S.C. § 1981, such claims must be dismissed. Section 1981's implicit cause of action does not extend to suits brought against state actors. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 732 (1989); *see also Arendale v. City of Memphis*, 519 F.3d 587, 594-99 (6th Cir. 2008).

### State Discriminatory Discipline Claim

Plaintiff's first claim alleges the discipline he received was discriminatory and in violation of Revised Code Chapter 4112. (Doc. 1-1, at ¶¶ 20-22). To establish a prima facie case of reverse

discrimination under § 4112.02, Ohio law requires the plaintiff to show: "(1) background circumstances supporting the inference that plaintiff's employer was the unusual employer who discriminated against non-minority employees, (2) that plaintiff was discharged (or that the employer took an action adverse to the plaintiff's employment), (3) that plaintiff was qualified for the position, and (4) that plaintiff was treated disparately from similarly situated minority employees." *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 632 (6th Cir. 2009). No reasonable jury could find either the requisite background circumstances or that Plaintiff was treated disparately from similarly situated minority employees. This shortcoming supports the grant of summary judgment on the remaining two claims as well.

*Lack of Background Circumstances*

Because Plaintiff alleges "reverse" racial discrimination, he must demonstrate background circumstances to support the suspicion the Defendants are the unusual employer who discriminates against the majority. *Grizell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). This is a common element for all of Plaintiff's claims. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (applying the background circumstances test to both Section 1983 claims and Title VII claims); *see also Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) (federal Title VII law is used when analyzing a claim brought under Revised Code Chapter 4112). Background circumstances include the racial composition of the relevant workforce and the decision-maker. *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 722 (N.D. Ohio 2008) (citing *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002). Plaintiff does not show the requisite background circumstances here, where thirteen of the seventeen officers promoted to Sergeant are white males (Navarre Supplemental Affidavit, Doc. 53-1, at ¶ 7) and where Defendant

Chief Navarre is white. These circumstances are not the sort of background circumstances which show a racial animus against the majority. *See Hout*, 550 F. Supp. 2d at 723 (background circumstances are not present in a reverse-discrimination case where the workforce is overwhelmingly white and male, and the decision-makers are white males).

*Disparate Treatment*

Plaintiff seeks to show there was a disparate treatment between how Plaintiff was disciplined and how similarly situated African-American officers were disciplined. He does this by citing the disciplinary record of a number of African-American officers, and argues the discipline they received for their infractions was less than he received for similar infractions. (Doc. 32-1, at 23-29). But the officers cited by Plaintiff are not "similarly situated" to Plaintiff. The disciplinary records of none of those officers, excepting Sergeant Dan Brandon, contain charges similar to those brought against Plaintiff in 2007. As discussed above, Plaintiff was disciplined twice in 2007 for serious offenses, either of which could have resulted in termination. (Amended Navarre Affidavit, Doc. 20, at ¶ 6). Only Sergeant Brandon's record contains as severe a charge as those Plaintiff faced in 2007, but he was punished more severely than Plaintiff. Sergeant Brandon was terminated immediately by the mayor without the termination being held in abeyance. Brandon, in contrast to Plaintiff, fought his termination, and successfully got it overturned by an arbitrator. Furthermore, Brandon, as a Sergeant, is a command officer and his conduct is governed by an entirely different collective bargaining agreement. *See* Toledo Municipal Code Chapter 2109. Lastly, in order to show the disciplinary records of these other officers, Plaintiff cites documents which are unauthenticated and unsupported by affidavit, and therefore are not to be considered on summary judgment. *See* Fed. R. of Evid. 901 & 903; *see also Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480-81 (6th Cir.

6

2008).

*Federal Civil Rights Claim*

Without identifying any specific constitutional right or provision, Plaintiff's second claim alleges violations of his constitutional rights under color of law and utilizes 42 U.S.C. §§ 1981 and 1983. (Doc. 1-1, ¶¶ 23-28). However, in his brief in opposition, Plaintiff argues his rights under the Equal Protection Clause were violated, and that he has evidence to directly prove this, pursuant to *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). Plaintiff has made no showing that Defendants have made "class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 593 (1979). Nor can Plaintiff argue that he is entitled to relief under a "class of one" theory of Equal Protection – such a claim is not recognized for public employees. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604-09 (2008).

*Arlington Heights* provides that a plaintiff may prove discriminatory intent through direct or circumstantial evidence showing that discriminatory purpose was a "motivating factor" of the decision. *Id.* at 265. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence as may be available." *Id.* at 266-68. Such evidence might include the disproportionate adverse impact of a policy or practice on one race, the "historical background of the decision", the "specific sequence of events leading up to the challenged decision", departures from procedural or substantive norms, or contemporary statements made by decision-makers. *Id.*

To support his application of *Arlington Heights*, Plaintiff relies on *Paskvan v. City of Cleveland Civil Service Commission*, 1995 WL 696787 (6th Cir. 1995). (Doc. 32-1, at 36). The

7

Sixth Circuit affirmed a jury verdict in favor of the plaintiff in *Paskvan*, who brought reverse discrimination claims against his employer, the Cleveland Police Department. Although Plaintiff seeks to use *Paskvan* to bolster his case, when contrasted with the instant case, the facts in *Paskvan* actually illuminate why Plaintiff cannot succeed in showing discriminatory purpose as a motivating factor.

Joseph Paskvan, a Cleveland police officer, was involved in nine line of duty shootings. The last two shootings were investigated internally, and in both cases Paskvan was found to have not committed any crime or violated any department regulation. After the last of the nine shootings, Paskvan was assigned to the police gym for 90 days in accord with department procedure. But after the 90 days expired, he was still assigned to the gym, where he remained for nineteen months. Paskvan was also denied the opportunity to work "secondary employment." Paskvan followed the appropriate grievance and arbitration procedures provided for by his union's CBA, and ultimately an arbitrator sided with him, requiring the city to either reassign him to his former unit or state a reason for permanently assigning him to the gym. The city gave a reason which Paskvan was unhappy with, and again he went to the arbitrator, who again sided with Paskvan and ordered the city to transfer him out of the gym. After this decision, Paskvan was transferred back to his old unit, but with a condition: the Chief of Police ordered that Paskvan could not work outside the Police Headquarters building. Paskvan challenged this, and again won on arbitration. *Paskvan*, 1995 WL 696787 at *1-3.

Paskvan also tried to become a Sergeant, and ranked third on the promotion list. Of the top 50 on that list, 49 were eventually promoted, but Paskvan was not. The director of public safety testified the community controversy over the shootings was "one of the reasons" and "an important

8

factor" for denying Paskvan the promotion. The chief of police similarly testified that outrage from minority community organizations was one of the reasons for the denial of promotion. *Id*.

The differences between the instant case and *Paskvan* are many and significant. First, as discussed above, Plaintiff waived his right to a hearing and came to a plea agreement for both 2007 incidents – he did not exercise his CBA-provided right to grieve and arbitrate his discipline, as Paskvan did.

Second, Paskvan was never found guilty of any crime or violation of department regulation, whereas Plaintiff *voluntarily pleaded* to the charges in both 2007 incidents. Thus Paskvan had no disciplinary record causing the actions of the city, there was merely the community outcry. But here the record is starkly different: Plaintiff, represented by his union, pleaded guilty and no contest to serious charges for which he received serious punishment. In fact, consistent with a 2007 plea *agreement*, Plaintiff was terminated from employment with that termination held in abeyance.

Third, Paskvan could point to bald statements by decision-makers – the chief of police and the director of public safety – indicating they took to heart the minority community's outrage over the shootings, and that this factored into their decisions with Paskvan. There is no such direct statement here. Plaintiff argues the statements Deputy Chief Kenney made to a reporter from a local minority-focused newspaper are such statements. But these statements, although against Department policy on commenting on pending internal investigations, simply described the facts of the second 2007 incident as they were known at that time. Kenney's statements to the paper include: "[Plaintiff's] supervisor viewed the tape and saw 'inappropriate actions' by [Plaintiff]", the charges then brought against Plaintiff were "obviously . . . serious charges", and Plaintiff had been "removed from patrol and reassigned to 'light duty' while an Internal Affairs Division investigation proceeds."

9

(Doc. 32-1, at 30-31; Navarre Deposition, Doc. 33-12, at 102-08; Doc. 36-9).  Plaintiff makes much of these comments, but even viewing the comments in a light most favorable to Plaintiff, they are simply accurate descriptions of the known situation at the time.

Simply put, for these reasons and those discussed above addressing Plaintiff's first claim, no reasonable jury could find that racial discrimination was a motivating factor in the actions taken against Plaintiff.

To the extent Plaintiff seeks to indirectly prove this claim by way of the *McDonnell-Douglas* framework, he fails for the reasons described below.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993) ("we shall assume that the *McDonnell Douglas* framework is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. § 1983").

*Discrimination in Promotion Claim*

In his third cause of action, Plaintiff claims discrimination in promotion in violation of both 42 U.S.C. §§ 1981 & 1983 and Ohio Revised Code Chapter 4112.  As an initial matter, the federal claims in this cause of action fail because they allege employment discrimination – a harm which has a separate federal remedy: Title VII.  A plaintiff may not bring a Title VII claim by way of Section 1983 and thereby avoid the administrative procedures involved with bringing a Title VII claim.  *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) ("Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII").  Plaintiff relies on *Rice v. Ohio Dep't of Transp.*, 887 F.2d 716 (6th Cir. 1989), for the proposition that Title VII does not preclude his ability to bring a Section 1983 claim.  (Doc. 32-1, at 15).  This reliance is misplaced.  Plaintiff's § 1983 claim in *Rice* was a free speech claim, *not* an employment discrimination claim.  *Rice*, 887 F.2d at 720 ("[U]nlike the plaintiff in *Day*, Mr Rice

has not brought his § 1983 retaliation claim to vindicate rights secured by Title VII; he seeks to vindicate rights he says are secured by the First Amendment of the Constitution."). Furthermore, *Rice* was summarily reversed by the United States Supreme Court. *Rice v. Ohio Dep't of Transp.*, 497 U.S. 1001 (1990). Because his third cause of action is in essence a Title VII employment discrimination claim, the federal claims in the third cause of action must be dismissed.

However, the state claim is based on Revised Code Chapter 4112, Ohio's civil rights statute, which provides relief for employment discrimination under Ohio law and whose "requirements are the same as under federal law [Title VII]". *Carter*, 349 F.3d at 272 (6th Cir. 2003). For the same reasons described above in the discussion of Plaintiff's second claim, Plaintiff cannot directly prove racial discrimination was a motivating factor in his failure to be promoted. Further, Plaintiff is unable to indirectly prove discrimination using the *McDonnell-Douglas* framework because he cannot make out a prima facie case of discrimination in promotion.

The first step in the *McDonnell-Douglas* test requires the plaintiff to establish a prima facie case. "The familiar four-part *McDonnell Douglas* test for a prima facie case of discriminatory failure to promote requires the plaintiff to demonstrate that (1) [he] is a member of a protected class; (2) [he] applied for and was qualified for the promotion; (3) [he] was considered for and was denied the promotion; and (4) other similarly qualified employees who are not members of the protected class received promotions at the time [he] was denied a promotion." *Ray v. Oakland Cnty. Circuit Court*, 355 F. App'x 873, 876-77 (6th Cir. 2009). Defendants argue Plaintiff cannot meet the second and fourth requirements of a prima facie case, specifically arguing: 1) Plaintiff was not qualified for promotion; and 2) Plaintiff cannot demonstrate other similarly qualified employees not of the protected class received promotions. The undersigned agrees.

First, no reasonable jury could find that Plaintiff was qualified for promotion to Sergeant. Plaintiff does not dispute Defendants' characterization of the factors considered when determining a promotion from patrolman to Sergeant. More particularly, Plaintiff does not dispute that a promotion candidate's disciplinary record is a key factor. (Amended Navarre Affidavit, Doc. 20, at ¶ 11; Navarre Deposition, Doc. 33-12, at 21; Wallace Deposition, Doc. 33-5, at 43). Plaintiff pleaded to two significant charges in 2007, resulting in suspensions and a suspended sentence of termination – serious consequences for serious charges.

Second, no reasonable jury could find similarly qualified employees not of the protected class received promotions. Every promoted African-American officer Plaintiff identifies did not have a similar disciplinary record to Plaintiff, and so were not "similarly qualified" as Plaintiff – they were better qualified because they lacked Plaintiff's serious disciplinary record. Further, according to Defendant Navarre's sworn statement, he has "never promoted a patrolman to sergeant that had one major disciplinary offense within the previous five years", let alone promote someone with two offenses within the previous year. (Amended Navarre Affidavit, Doc. 20, at ¶ 12). Plaintiff does not dispute the veracity of this statement, nor does Plaintiff dispute that none of the promoted officers had any major disciplinary issues.

Third, even if Plaintiff were able to show a prima facie case, no reasonable jury could find the Defendant's proffered nondiscriminatory reason mere pretext. There can be no reasonable dispute that an officer who is currently under a suspended sentence of *termination* would not be promoted, especially when other qualified applicants for promotion exist who do not have similar disciplinary records. Plaintiff cannot directly or indirectly prove discriminatory motive on the part of Defendants, and his claims therefore fail.

*Defendant City of Toledo*

Plaintiff includes the City of Toledo as a Defendant for all claims.  For a local government to be held liable under 42 U.S.C. § 1983, "a plaintiff must show that his injuries were the result of some 'policy or custom' attributable to the governmental entity." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). The local government's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under §1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694). "[T]o satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citations omitted).

Although municipal liability may be imposed for a single act by a policymaker, "municipal liability attaches only where the decisionmaker possesses final authority to establish policy with respect to the action ordered."  *Pembauer v. City of Cincinnati*, 475 U.S. 469, 481-82 (1985). "The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Id.* at 482.  Where a decision is made that is facially neutral – in this case, the decision to promote an officer to Sergeant – the plaintiff must not only show a deprivation of a federal right, but also that the decision was made with "deliberate indifference" to plaintiff's constitutional rights.  *Bd. of Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 407 (1997).

As discussed above, Plaintiff presents no evidence suggesting Defendant Navarre's decision

13

to not promote Plaintiff violated a federal right or was motivated by anything other than Plaintiff's disciplinary record. This single act of a policymaker therefore cannot lead to municipal liability for the City, because it was not made with deliberate indifference to Plaintiff's rights. *Id.*

Plaintiff is unable to show any custom, policy, or practice resulting in a constitutional violation. Plaintiff claims the City had a desire to "ease tensions with the African American community" and sought to do this by "1) aggressively responding to publicized allegations of 'brutality' by white police officers on African Americans, and 2) being responsive to their calls for more aggressive affirmative action measures favoring African American employees." (Doc. 32-1, at 21). This is but a mere assertion, unsupported by any admissible evidence. The only evidence Plaintiff cites are various news articles dating as far back as 2005 allegedly depicting a groundswell of public outcry in the minority community against the Department. This "evidence" is inadmissible as hearsay and this Court thus cannot consider it on summary judgment. *See Sigler*, 532 F.3d at 480-81; *see also* Fed. R. of Evid. 801, 803, & 804. Further, the admissible sworn statements of Toledo Police Sergeants Coates and Furr, two African-American officers who were promoted instead of Plaintiff, state they do not believe there is any problem between the African-American community and the Toledo Police Department. (Coates Deposition, Doc. 35-7, at 12-14; Furr Deposition, Doc. 35-6, at 12). Even if the news articles could be considered, viewing the facts in a light most favorable to Plaintiff, all he has shown is that there was an outcry from the African-American community. He has not shown the City enacted any policy or custom in reaction to that outcry which resulted in denying a promotion to Plaintiff or disciplining him more harshly than a similarly situated African-American officer. On the basis of the evidence cited by Plaintiff, no reasonable jury could find that Defendants succumbed to alleged community pressure and mistreated Plaintiff

14

because he is white.

Plaintiff also spends some of his brief in opposition arguing about the City's affirmative action policies.  He does not, however, provide any support for the contention that these policies were a motivating factor in Plaintiff's discipline or failure to be promoted.  Therefore, no reasonable jury could find these affirmative action policies were the cause of these particular harms to Plaintiff.

Regardless of whether Plaintiff can show a City custom or policy, his claims against the City fail because there was no underlying constitutional violation as discussed above, and therefore, even if Plaintiff could demonstrate a custom or policy, he cannot show it was "the moving force of the constitutional violation".  *Monell*, 436 U.S. at 694.

## Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the Defendants' Motion for Summary Judgment be granted.

                s/James R. Knepp II

                United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).